IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

RUSSELL PICKRON,                    :
                                    :
                                    :
        Plaintiff,                  :
                                    :
v.                                  :        CIVIL ACTION NO.
                                    :        3:24-cv-00152-LMM
                                    :
MAYOR RICHARD PROCTOR (in           :
his individual capacity) and WILLIE :
J. NORRIS (in his individual        :
capacity),                          :
                                    :
        Defendants.                 :

**<u>ORDER</u>**

This case comes before the Court on Defendants' Motion for Summary

Judgment. Dkt. No. [34]. After due consideration, the Court enters the following

Order.

## I.    **BACKGROUND**[1]

---

[1] Plaintiff's responses do not comply with this Court's Local Rules. In this District, a summary judgment movant's facts are deemed admitted unless the non-movant (1) "directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number)," (2) "states a valid objection to the admissibility of the movant's fact," or (3) "points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1)." LR. 56.1 (B)(2)(a)(2), NDGa. Additionally, the non-movant's responsive filing must "contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." <u>Id.</u> at 56.1 (B)(2)(a)(1). Plaintiff's responses do neither.

Plaintiff Russell Pickron is a content creator who posts videos to YouTube related to his interactions with government officials. Dkt. No. [36] at 28. On November 13, 2023, he attended a City of Grantville council meeting, id. at 20, over which Defendant Richard Proctor, Mayor of Grantville, Georgia presided, Dkt. No. [34-4] ¶ 4. Plaintiff signed up to speak during the public comment portion of the meeting. Dkt. No. [36] at 19. Once he began speaking, Plaintiff directed his comments at the city manager, and Defendant Proctor instructed Plaintiff to redirect them to the council. Dkt. No. [34-4] ¶ 4. After a verbal exchange with Defendant Proctor, Plaintiff reiterated his comments about the city manager but was allowed to speak until the expiration of the three minutes he was allotted. Id.

Roughly a month later, Plaintiff was filming inside Grantville's City Hall. Dkt. No. [36] at 57–58. He did not have a permit from the city to do so. Dkt. No. [34-3] ¶ 7. Defendant Proctor informed Defendant Willie Norris, a city police

---

Where Plaintiff has not done so, he has not genuinely disputed the facts set forth by Defendants' statement of undisputed facts. Defendant has, however, filed a "Statement of Ndisputed [sic] Material Facts as to Which There is a Gunume [sic] Issue to be Tried." Dkt. No. [40] at 5–7. But his assertions therein are not individually numbered and are often without citation. Putting the numbering aside, any fact Plaintiff asserts in this filing without citing to supporting evidence will be disregarded. See LR. 56.1(B)(1), NDGa. ("Each material fact must be numbered separately and supported by a citation to evidence proving such fact."). The Court recognizes that Plaintiff is appearing pro se. Thus, his filings are more leniently construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). But nothing in that leniency excuses a plaintiff from complying with this Court's local rules. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1998).

officer, that he believed Plaintiff was violating an ordinance that requires any "production company" to obtain a permit from the city to use its streets, sidewalks, or any other city-owned property for filming. Id. Defendant Norris reviewed the ordinance and determined that Plaintiff was violating it. Dkt. No. [34-3] ¶ 5. He then cited Plaintiff for his noncompliance. Id. Plaintiff posts his encounters with government officials to his YouTube channel, often complete with music, graphics, voiceovers, and film editing. Id. at 28–31. And Plaintiff's channel is monetized, meaning he makes money from his content based on advertisements and his volume of viewers. Id. at 26–27. Defendant Norris knew of the nature and identity of Plaintiff's channel at the time he issued the citation. Dkt. No. [34-3] ¶ 4.

On February 12, 2024, Plaintiff attended a Grantville work session. Id. ¶ 5. Plaintiff was not allowed to speak because he was not on the agenda as the city required. Id. But before it began, Plaintiff filmed an interaction between himself and Defendant Proctor during which Defendant Proctor began to play music. Dkt. No. [36] at 17; Dkt. No. [34-2] ¶ 13. Defendant Proctor was not exercising any power or authority granted to him as mayor when he played music prior to the council work session, Dkt. No. [34-4] ¶ 3; nor did he prohibit Plaintiff from filming at any time prior to or during the city work session. Id. ¶ 5.

Long before these encounters, Defendant Proctor created a Facebook page when he was campaigning to become the Mayor of Grantville in 2022. Id. ¶ 6. He now uses it both for official and personal activity. Id. Although he has deleted

3

entire posts—which necessarily deletes the comments posted thereunder—Defendant Proctor has not otherwise deleted comments posted by Plaintiff's profile, "Georgia Transparency." Id. Likewise, Defendant Proctor has not blocked Plaintiff's profile from accessing or commenting on his Facebook page. Id.

Plaintiff asserts three claims against Defendant Proctor for retaliation in violation of the First Amendment, a conspiracy claim against both defendants for violations of the First and Fourth Amendments, and a claim against Defendant Norris for violating his First and Fourth Amendment rights. Dkt. No. [6] at 5–18. Defendants now move for summary judgment on all of Plaintiff's claims. Dkt. No. [34].

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co.,

357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." <u>Celotex Corp.</u>, 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. <u>Johnson v. Clifton</u>, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Id.</u> (cleaned up). All reasonable doubts, however, are resolved in the favor of the non-movant. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III.  DISCUSSION

Defendants seek summary judgment on the grounds that: (1) qualified immunity bars each of Plaintiff's substantive claims against both defendants, Dkt. No. [34-1] at 8–18; and (2) the intracorporate conspiracy doctrine precludes any conspiracy between Defendants as a matter of law. <u>id.</u> at 18–20. Plaintiff opposes

each argument. Dkt. No. [40-1] at 10–17. The Court addresses each separately below.

Counts One, Two, Three, and Five each turn on whether Defendants are entitled to qualified immunity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "To receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Whittier v. Kobayashi, 581 F.3d 1304, 1307 (11th Cir. 2009) (cleaned up). If a defendant meets this threshold, the burden then shifts to the plaintiff to show that the officials violated a clearly established constitutional right. Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019).

### A.    City Council Meeting (Count One)

Defendants first argue that Count One of Plaintiff's Complaint, which alleges that Defendant Proctor violated Plaintiff's First Amendment rights, is barred by qualified immunity. Dkt. No. [34-1] at 8–10. They contend that the Mayor, as presiding officer, may impose limits on public comment participants to ensure the effective operation of the city council. Id. at 8–9. Defendants argue this is consistent with the public comment portion of a city council meeting being a limited public forum upon which the government may place reasonable,

viewpoint-neutral restrictions. Id. Defendants likewise contend that Proctor's actions as presiding officer were discretionary, and that Plaintiff cannot show that Defendant Proctor violated clearly established law when he enforced the council's rules against him. Id. at 9–10. Plaintiff responds that Defendant Proctor cannot "select whose speech he wants to chill," noting that he alone was interrupted by Defendant Proctor, which he contends is evidence of viewpoint-discrimination. Dkt No. [40-1] at 11. For the reasons set forth below, the Court agrees with Defendants.

It is undisputed that, with respect to the November 2023 council meeting, Defendant Proctor was performing a discretionary act. Dkt. No. [34-1] at 8; Dkt. No. [40-1] at 11. Thus, the burden shifts to Plaintiff to show that Defendant Proctor is not entitled to qualified immunity. See Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009) ("Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply."); see also T.R. ex rel. Brock v. Lamar Cnty. Bd. of Educ., 25 F.4th 877, 882 (11th Cir. 2022) (noting that, after an official establishes the first prong of qualified immunity, "the burden shifts to the plaintiff to show that qualified immunity should not apply"). Plaintiff can do so by establishing that Defendant Proctor (1) "violated a federal statutory or constitutional right," and (2) "the unlawfulness of [his] conduct was 'clearly established at the time.'" Paez, 915 F.3d at 1284. Courts may consider in either order the "constitutional

violation" or "clearly established" elements of qualified immunity. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

Plaintiff's first claim fails because he cannot establish a constitutional violation. To determine what restrictions, if any, the government may place on speech, the Court must first determine the type of forum that the particular speech is occurring in. <u>See</u> <u>Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.</u>, 473 U.S. 788, 800 (1985) ([T]he extent to which the Government can control access depends on the nature of the relevant forum.").

Defendants assert that the public comment period of a city council meeting is a limited public forum. Dkt. No. [34-1] at 9. Plaintiff agrees. <u>See</u> Dkt. No. [40-1] at 11 ("While limited public forums can restrict certain rights under the First Amendment, it [sic] can't restrict one's viewpoint."). Both are correct. The public comment portion of a city council meeting is a limited public forum: members of the public are required to obtain permission from the city to speak, and the city retains discretion to allow or disallow their comments. <u>See</u> <u>Barrett v. Walker Cnty. Sch. Dist.</u>, 872 F.3d 1209, 1224–25 (11th Cir. 2017) (defining a limited public forum as "a system of selective access," wherein the public does not "enjoy unhindered access to the forum," and "each individual member must obtain permission from the governmental proprietor of the forum, who in turn has discretion to grant or deny permission"). Accordingly, the city and its mayor may place content-based restrictions on comments at the meeting so long as they are "reasonable in light of the purpose served by the forum," and do not

"discriminate against speech on the basis of its viewpoint." Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995); Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106–07 (2001).

Here, Defendant Proctor instructed Plaintiff to redirect his comments to the council in accordance with the city's code of ordinances. Dkt. No. [34-4] ¶ 4; see also id. at 8 ("All remarks shall be directed to the council as a body and addressed through the mayor. Remarks shall not be made to a particular councilmember."). Even if this is a content-based restriction, it is viewpoint-neutral and reasonable in light of the forum's purpose. See Barrett, 972 F.3d at 1225 ("[P]ublic comment is limited to 'issues of concern,' and speakers may not raise complaints against Board employees . . . . This is content-based discrimination, which is permitted in a limited public forum if it is viewpoint neutral and reasonable in light of the forum's purpose."); see also Moms for Liberty - Brevard Cnty. v. Brevard Pub. Sch., 582 F. Supp. 3d 1214, 1219 (M.D. Fla. 2022), aff'd, No. 22-10297, 2022 WL 17091924 (11th Cir. 2022) ("Requiring the speaker to address the Chair rather than individual Board members is not based on the speech's content, but because members do not possess the power of the Board.").

Plaintiff asserts that Defendant Proctor interrupted him and him alone—proving that Defendant Proctor targeted Plaintiff for what he was saying. Dkt. No. [40-1] at 11. Plaintiff appears to argue that Defendant Proctor's enforcement of the policy amounted to viewpoint discrimination. But a speech restriction

constitutes viewpoint discrimination only "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." Jackson v. McCurry, 762 F. App'x 919, 930 (11th Cir. 2019) (quoting Rosenberger, 515 U.S. at 829). Plaintiff has adduced no evidence that suggests Defendant Proctor was motivated by the content of his speech. Indeed, Defendant Proctor permitted Plaintiff to speak for the remainder of the time he was allotted.[2] Dkt. No. [34-4] ¶ 4. This is not a case where the defendant mayor had allowed councilmembers to be addressed individually by some, but strictly enforced the rule against others. See e.g., Moms for Liberty - Brevard Cnty. v. Brevard Pub. Sch., 118 F.4th 1324, 1336 (11th Cir. 2024) ("This kind of inconsistent enforcement is exactly what this Court and the Supreme Court have warned against."). Rather, the undisputed evidence reflects that Defendant Proctor enforced a content-based restriction designed to ensure the orderly conduct of the meeting.

Accordingly, Plaintiff has not shown that Defendant Proctor violated any constitutional right by enforcing the city's ordinance in the manner that he did.

---

[2] For this reason, Plaintiff cannot show that he suffered any infringement to his First Amendment rights; he was not prohibited from expressing his viewpoint within the forum. See Matacchiero v. McCormick, No. 3:24CV105-TKW-ZCB, 2024 WL 3629442, at *5 (N.D. Fla. Aug. 1, 2024) ("[G]iven that Plaintiff was allowed to continue his comments after the recess and repeat (almost verbatim) the points that he was making when he was ruled out of order, it does not appear that his First Amendment rights were infringed on at all by Defendant ruling him out of order the first time.").

Defendant Proctor is therefore entitled to qualified immunity for Count One. Defendant's Motion for Summary Judgment will be **GRANTED** as to Count One.

### B.    City Council Work Session (Count Two)

Defendants next argue that Plaintiff's claim based on the February 12, 2024, work session fails because Plaintiff has adduced no evidence showing (1) that Defendant Proctor was acting under color of state law when he played music during their interaction prior to the meeting; or (2) that he was prohibited from filming *at all*. Dkt. No. [34-1] at 10–13. Additionally, to the extent Plaintiff argues that his First Amendment rights were violated at that work session, Defendants argue that Plaintiff has not shown that Defendant Proctor violated clearly established law by preventing him from speaking without registration. Id. at 12–13. In response, Plaintiff offers additional facts tending to rebut Defendant's description of the events on February 12, 2024—none of which cite to authenticated evidence.[3] For the reasons set forth below, the Court agrees with Defendants.

---

[3] Defendants object to several of Plaintiff's assertions by claiming that the evidence used to support them, usually video, is unauthenticated. See Dkt. No. [45] ¶¶ 1, 5, 8. But "evidence does not have to be authenticated or otherwise presented in an admissible form to be considered at the summary judgment stage, 'as long as the evidence could ultimately be presented in an admissible form.'" Smith v. Marcus & Millichap, Inc., 991 F.3d 1145, 1156 n.2 (11th Cir. 2021); accord Carrizosa v. Chiquita Brands Int'l, Inc., 47 F.4th 1278, 1304 (11th Cir. 2022).

There can be no § 1983 liability if a defendant does not act "under color of" state law. 42 U.S.C § 1983. "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." Almand v. DeKalb Cnty., 103 F.3d 1510, 1513 (11th Cir. 1997). "The dispositive question is whether the defendant was exercising the power she possessed based on state authority or was acting only as a private individual." Butler v. Sheriff of Palm Beach Cnty., 685 F.3d 1261, 1265 (11th Cir. 2012). While the personal acts of an official are "plainly excluded," acts "undertake[n] to perform their official duties" are not. Screws v. United States, 325 U.S. 91, 111 (1945).

Defendant Proctor has adduced two sections of the City Charter which define his authority as mayor. Dkt. No. [34-3] at 11. Neither section mentions music or any other form of media. Id. And Plaintiff does not contend that either does; nor does Plaintiff argue that *only* the mayor could have played the music. Where Plaintiff does argue that Defendant Proctor acted in his mayoral authority by playing the music, he cites no record evidence. See, e.g., Dkt. No. [40-1] at 3, 12. Even viewed in the light most favorable to Plaintiff, the record lacks sufficient

---

Instead, the evidence "need only be capable of authentication." Id. Here, as Plaintiff himself made the challenged videos, he would be able to authenticate them through testimony. See Fed. R. Evid. 901(b)(1); see e.g., Fed. Ins. Co. v. United Cmty. Banks, Inc., No. 2:08-CV-0128-RWS, 2010 WL 3842359, at *8 (N.D. Ga. Sept. 27, 2010) ("Defendants would be able to demonstrate a rational basis that the claim note is what they assert it to be because the document came from Federal and the author is known. This document would be able to be authenticated at trial."). Accordingly, the Court will consider them where relevant.

evidence from which a jury could conclude that Defendant Proctor acted with the authority he possessed "by virtue of" being the mayor. Almand, 103 F.3d at 1513. Accordingly, this part of Count Two fails for lack of state action. Even if this Court found that Defendant Proctor acted under color of state law when he played copyrighted music during his encounter with Plaintiff, Plaintiff has not carried his burden of showing that such act would be a clearly established constitutional violation—or a constitutional violation at all.[4]

With respect to the work session, during which Plaintiff could not publicly comment, the analysis largely mirrors that of the November 2023 meeting. Defendant Proctor enforced a viewpoint-neutral rule by not allowing unscheduled participants to comment. Plaintiff highlights no clearly established law prohibiting Defendant Proctor from doing so. Accordingly, Plaintiff has not shown a clearly established constitutional violation arising from the February 2024 work session, meaning Defendant Proctor is entitled to qualified immunity for his actions while presiding over it. Defendant's Motion for Summary Judgment will be **GRANTED** as to Count Two.

---

[4] It could be argued that Defendant Proctor acted in his mayoral capacity when he told Plaintiff "You're not even gone be allowed to speak at this meeting." Dkt. No. [43] at PL0002 (0:00:08-0:00:10). But this is not the act at issue. See Dkt. No. [1-3] at 6 (alleging that Defendant Proctor "interfered and 'chilled' Plaintiff's rights by engaging in prior restraint by playing loud music, so the Plaintiff could not fully report and publish about government officials, affairs and actions").

### C.    Defendant Proctor's Social Media (Count Three)

Next, Defendants contend that Plaintiff cannot show that Defendant Proctor's purported Facebook activity violated clearly established law. In particular, they note that the issue of whether a public official's social media activity is "state action" for § 1983 purposes was unsettled before March 15, 2025—the day the Supreme Court decided <u>Lindke v. Freed</u>, 601 U.S. 187 (2024). Dkt. No. [34-1] at 13–18. In any event, Defendants argue, it is still not clearly established what type of forum an official's social media page is, and therefore, what constitutional rules apply to its governance. <u>Id.</u> Plaintiff claims in response that Defendant Proctor deleted his comments, thereby engaging in a "content-based restriction on speech." Dkt. No. [40-1] at 13. He also claims that Defendant Proctor's administration of the page amounted to viewpoint discrimination. <u>Id.</u> at 14. For the reasons set forth below, the Court agrees with Defendants.

The substantive analysis of this claim mirrors this Court's earlier Order denying Plaintiff's Motion for Preliminary Injunction. Dkt. No. [46]. There, this Court held that:

> Plaintiff has not shown the Court that it is clearly established that (1) a government official's deletion of comments from his or her official social media page constitutes state action, (2) a government official's official social media page is a public forum, (3) removing comments from a such pages violates the First Amendment, or (4) government officials must permit all comments from the public on those pages.

<u>Id.</u> at 8–9. Although a different standard applies, the same holds true here.

Plaintiff's response highlights no authority that clearly establishes *any* of the above such that Defendant Proctor had notice of a potential

constitutional violation. To the contrary, both this Court and the Eleventh Circuit have found this area of the law to be an evolving one. See Taylor v. Palmer, 2023 WL 4399992 at *4 (11th Cir. 2023) ("It was not clearly established in December 2016 that blocking a member of the public from posting on a government Facebook page in circumstances like these, even if based on viewpoint, violated the First Amendment."); Biedermann v. Ehrhart, No. 1:20-CV-01388-JPB, 2022 WL 769215 at *6 (N.D. Ga. Mar. 14, 2022) ("[T]he Court does not believe that in 2019, the law was sufficiently clear on the constitutionality of blocking a citizen from a government official's social media page to provide Defendant with notice that her conduct was unlawful."); Durand v. Echols, No. 1:22-cv-04548-VMC, 2023 WL 11767044, at *3 (N.D. Ga. July 27, 2023) ("[T]he law in this area - the intersection of First Amendment rights and engagement with government officials' social media pages - is unsettled and continues to evolve."). Even assuming his purported social media activity was state action, Defendant Proctor is entitled to qualified immunity for it. Accordingly, Defendant's Motion for Summary Judgment will be **GRANTED** as to Count Three.

### D.    Conspiracy (Count Four)

Defendants claim that Count Four of Plaintiff's Complaint—which alleges conspiracy between Defendants Proctor and Norris to violate his First and Fourth Amendment rights—fails because, *inter alia*, it is barred by the intracorporate conspiracy doctrine. Dkt. No. [34-1] at 18–20. Plaintiff responds with a series of

factual assertions without citations to evidence. Dkt. No. [40-1] at 14–15. For the reasons set forth below, the Court agrees with Defendants.

"A plaintiff claiming a § 1983 conspiracy must prove the defendants 'reached an understanding' to violate the plaintiff's constitutional rights." Grider v. City of Auburn, 618 F.3d 1240, 1260 (11th Cir. 2010) (quoting Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., 956 F.2d 1112, 1122 (11th Cir.1992)). "The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." Id. (quoting Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir.1990)). Here, Plaintiff's claim fails because, even if Defendants "reached an understanding" to cite Plaintiff,[5] his claim is barred by the intracorporate conspiracy doctrine.

"The intracorporate conspiracy doctrine bars conspiracy claims against corporate or government actors accused of conspiring together within an organization." Rehberg v. Paulk, 611 F.3d 828, 854 (11th Cir. 2010), aff'd, 566

---

[5] Even if his claim was not barred by the intracorporate conspiracy doctrine as explained below, Plaintiff's claim fails for another reason. "[T]o sustain a conspiracy action under § 1983, as distinguished from § 1985, a plaintiff must show an underlying actual denial of its constitutional rights." GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998). Plaintiff does assert that Defendant Norris violated his First and Fourth Amendment rights. See Dkt. No. [1-3] at 11–12. But that assertion is based on Defendant Norris issuing him a citation. As explained in the analysis of Count V, Defendant Norris had probable cause cite Plaintiff—barring any constitutional claim arising therefrom. Cf. Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010) ("[T]he existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest."). As such, Plaintiff cannot show an underlying constitutional violation, and his claim would still fail.

U.S. 356 (2012). "The doctrine applies to public entities such as the City and its personnel." Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001). No pair of city employees could form the requisite agreement for a conspiracy because the law attributes "the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor." Dickerson v. Alachua Cnty. Comm'n, 200 F.3d 761, 767 (11th Cir. 2000). It is, therefore, "not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself." Id.

It is undisputed that both defendants were city employees when Defendant Norris cited Plaintiff. Dkt. No. [34-4] ¶ 2; Dkt. No. [34-3] ¶¶ 2–3; Dkt. No. [40] at 4. Therefore, each of their acts taken within the scope of their employment are attributed to the city. See Grider, 618 F.3d at 1261 ("[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."). Plaintiff has not produced evidence of either defendant acting beyond the scope of his city employment. Accordingly, Plaintiff has not shown the "multiplicity of actors necessary for the formation of a conspiracy." Grider, 618 F.3d at 1261. Plaintiff's conspiracy claim is therefore barred by the intracorporate conspiracy doctrine, and Defendants' Motion for Summary Judgment will be **GRANTED** as to Count Four.

### E.    Defendant Norris (Count V)

Finally, Defendants argue that Plaintiff cannot show that Defendant Norris violated clearly established law when he cited Plaintiff for violating a city ordinance. Dkt. No. [34-1] at 20–24. Plaintiff responds that he has a First Amendment right to gather information about the acts of public officials on public property, including a right to record matters of public interest. Dkt. No. [40-1] at 15. Plaintiff further asserts that he was not in violation of the ordinance, and that Defendant Norris ignored his oath by acting at the direction of Defendant Proctor. Id. at 16. The Court agrees with Defendants.

It is undisputed that Defendant Norris was exercising his discretionary authority when he cited Plaintiff. Dkt. No. [34-1] at 21. Accordingly, the burden shifts to Plaintiff to show that Defendant Norris violated clearly established law by citing him. See Lewis, 561 F.3d at 1291. Plaintiff's case law, however, does not hold that an officer violates the First Amendment when, with a reasonable belief that a lawful ordinance[6] is being violated, he issues a citation to the violator. In fact, the law on this question reflects the opposite. See Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999) ("An arrest without probable cause is unconstitutional, but officers who make such an arrest are entitled to qualified immunity if there was *arguable* probable cause for the arrest.") (emphasis added); see id. n.3 (collecting cases).

---

[6] Plaintiff has not challenged the constitutionality of the underlying ordinance.

Although this case concerns a citation and not an arrest, the logic is the same. An officer is entitled to qualified immunity for issuing a citation if there was "arguable probable cause" for the citation. Cf. Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997). "Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Storck v. City of Coral Springs, 354 F.3d 1307, 1315 (11th Cir. 2003) (cleaned up). Therefore, the Court considers the information Defendant Norris had at the time, and whether it could lead a reasonable officer to conclude that probable cause existed to cite Plaintiff.

At the time he cited Plaintiff, Defendant Norris was aware of Plaintiff's identity, and the nature and identity of Plaintiff's YouTube channel. Dkt. No. [34-3] ¶ 4. Based on "the nature of content" on Plaintiff's channel and his "receipt of income from the channel,"[7] Defendant Norris believed that Plaintiff was a producer or production company, and was filming on Grantville property without a permit from the city. Id. at ¶¶ 4–5. The relevant ordinance provides that "[u]se of . . . city-owned property by any movies/TV/advertising/production company filming in the city shall be permitted only upon approval by the mayor and council following application setting forth the days, times, and scope of the intended use." Id. at 5.  Here, Defendant Proctor told Defendant Norris that Plaintiff had no such permit. Dkt. No. [34-3] ¶ 5. Defendant Norris, who was

---

[7] Defendant Norris believed Plaintiff derived income from the channel based on "the volume of viewership and ads on his channel." Dkt. No. [34-3] ¶ 4.

aware of the commercial nature of Plaintiff's channel, thereafter saw Plaintiff filming on city property. Id.

Plaintiff's only argument relative to probable cause is that neither he nor his channel are entities required by the ordinance to obtain a permit. Dkt. No. [40-1] at 16. But whether Plaintiff's channel was *actually* a movie producer or production company is immaterial; it matters only that Defendant Norris could have reasonably believed that it was, and that it was filming without a permit. See Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990) ("[W]e must determine whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff for violation of [a statute]."). Based on the information known to him at the time, Defendant Norris reasonably believed that Plaintiff was violating the ordinance. Defendant Norris therefore had probable cause,[8] and certainly arguable probable cause, to issue Plaintiff a citation. Consequently, he is entitled to qualified immunity for doing so, and Defendant's Motion for Summary Judgment will be **GRANTED** as to Count Five.

---

[8] For the same reason, Plaintiff's First Amendment-based § 1983 claim also fails. It is well-established that "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." Brown, 608 F.3d at 734. And again, although no arrests are at issue, there is no apparent reason why probable cause to issue a citation would not also bar a constitutional challenge to the issuance of that citation as it does in the context of an arrest. See Gates v. Khokhar, 884 F.3d 1290, 1297–99 (11th Cir. 2018) (rejecting a First Amendment-based § 1983 claim due to probable cause for an arrest and collecting cases).

## IV.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Defendants' Motion for Summary Judgment, Dkt. No. [34], and this case is **DISMISSED**. The Clerk is **DIRECTED** to close the case.


**IT IS SO ORDERED** this 22nd day of July, 2025.

**Leigh Martin May**
**United States District Judge**